Thursday, May 5. The Judges pronounced their opinions.
Judge Tucker.
This was an ejectxhent; the plaintiff claiming under a covenant to stand seised, entered into about the year 1730, between Robert Carter of Romitiy, and the father of the plaintiff, and othei's to their use as tenants in common in fee-simple; and under a partition actually made under a decree of theH.igh Court of Chancery between Robert Carter, jun. and the plaintiff in ejectment, and the other tenants in coxnmon, by which the premises were allotted to the lessor of the plaintiff; and the defendants under a conveyance in fee-simple from the last mentioned, Robert Carter to one Semple, who mortgaged the premises to tee, which mortgage was foreclosed, and the lands sold under the decree, and purchased by the defendants and those under whom they claim. Upon the trial the x-ecord of the pax-tition made between the tenants in common under a decree of the High Court of Chancery, was offered to be -read in evidence by the plaintiff, but reject *353 ed by the Court, because it appeared to them that the defendants hacl been in possession of the premises ever since the year 1762,.under the conveyance from is?. C. jun. to y. Semple.
I have entertained very considerable doubts upon the only question of any importance arising in this cause; namely, the admissibility of the record of partition between Robert and Charles Carter, and the other tenants in common, upon the trial of this ejectment, inasmuch as neither the defend, ants, nor any person under whom they claim, except Robert Carter, were parties to the suit in Chancery for a partition of the lands held in common.
In the first place, I had no doubt that the covenant to stand seised, to the use of the other parties to that covenant, in fee-simple, did, under the operation of the statute of uses, vest a legal estate, in fee-simple, in all the parties thereto, as tenants in common, of the whole undivided Frying-Pan tract of land.
Secondly, it appeared to me, that if, after partition made? a real action had been brought against either of the tenants in common, they might, by the common law, have vouched Robert Carter, jun. as heir to the covenantor, to -warranty.(a) And, on the other hand, I had no doubt, that, if a real action had been brought against John Semple, or his heirs, they also might vouch the same Robert Carter to warranty, by virtue of his conveyance to John Semple. And this upon that principle of the common law which substituted a voucher in lieu of an action.(b) And, inasmuch, as, in a contest between parties claiming under the same feoffor with warranty, whichever prevails, the warrantor is liable to the other upon his warranty; or, if he be dead, his heir is equally liable ; it seemed to me at first, that there was such a privity between the parties in this ejectment, as that the record of partition might be admitted as evidence in a controversy between them.- But I am satisfied, upon further consideration, that it ought not. For there, is no pri. vity between the present defendants and Robert Carter who *354 sold the lands to Semple. They are neither the heirs, nor even assigns, of Se?nple. Their claim is founded upon the decree for the sale of the lands, upon the foreclosure of Semple's mortgage to Philip L. Lee: if they have a conveyance, it must be from the sheriff, by whom the decree was executed, pursuant" to the directions of the statute.(a) There is therefore no foundation to presume any privity between Robert Carter, and them. The record, therefore, was properly rejected, and the judgment ought to be affirmed.
judge Roake.
I have seen no adjudged case upon the very point; but it would seem to be a just position, that a Verdict against an ancestor, in order to bind those claiming under him, must have taken place daring the. existence of his title. If this criterion be not adhered to, I sec nothing to prevent the ancestor and his heirs from binding those deriving title under him, at the most remote periods of time. This would produce innumerable frauds, and let in the transactions of insolvent persons. Besides-the spirit of the rule, that no man is to be bound by a verdict, unless- he or those under whom he claims, had the liberty to cross-examine, would perhaps, be violated; that spirit seems to require that the party to the suit in which the Verdict is rendered should have an equal interest with him against whom it is to be used. These positions seem equally to apply to decrees in equity: and in the case in question, Robert Carter was not equally interested with the appellees, in relation to the possession, at least, of the land in controversy. It Was, perhaps, unimportant to him Whether the appellees were dispossessed of this land, or not. In the one case, his warranty would bind him to remunerate them its value ; and, in the other, he would have to yield other lands of equal value to the plaintiffs in the suit for partition. He therefore had not the same inducements with the appellees to defend the possession of this land: and consequently the decree in the suit for petition-was rightly rejected.
I am of opinion that the judgment ought to be affirmed»
*355 Judge Fleming.
The only question that seems material for this Court to decide at present, is, whether the District Court erred in not permitting the record of the suit in Chancer}', brought by the appellant, and others, against Robert Carter, for a division of the trust estate, to go in evidence to the Jury, on the trial of the ejectment ?
There is no general principle of law that seems better 'settled than that no one shall be injured or affected by the event of any suit in which he was not a party; the reasons of which are laid down in all the books, and are too obvious to need repeating here. There was no error then, in the Court’s refusing to permit the record in the suit in Chancery to go as evidence to the Jury, the defendant not having been a party in that suit.
With respect to die exception on the part of the defendant to the opinion of the Court, in permitting the paper purporting to be a copy of an agreement or indenture between the members of the Copper-mine Company in the year 1731, to go in evidence to the Jury, it seems immaterial to consider it here, as he was the prevailing party in .the suit, and received no injury by such permission,
Judgment unanimously aiiiemed,

 Co. Lit, 101 b. 103 a.

 Co. Lit. 102 a.

 L. V. ed. 1794, and c. 90. s. 19.